Case No. 23-1291, Wendy Cockrun v. Berrien County MI et al. Argument not to exceed 15 minutes per side. Mr. McGovern, you may proceed. Good morning. Good morning. I have three minutes I would like to set aside for rebuttal. That's fine. Thank you. James McGovern, I represent deputies with the Berrien County Sheriff's Office. They are all jail deputies. The plaintiff is Wendy Cockrun. She was an inmate during the underlying incident. The basis of our appeal is the decision of the district court judge and the magistrate judge who wrote the initiating order to rule that we waived qualified immunity when we filed our motion for summary judgment. I would like to address that first because qualified immunity in this case was not waived during the briefing and there are two specific reasons that I want to address to demonstrate that to the court. The first one is that the opinion from Judge Neff adopted the opinion from the magistrate judge and the magistrate judge specifically noted that the affirmative defense on the pleadings was qualified immunity. But more importantly, Judge Neff actually quoted the section of our brief where we specifically waived qualified immunity and that is ECF number 99 at page ID 1185. She references that on page 3 of 6 of her order specifically noting that in our initiating brief for summary judgment we raised qualified immunity. You mentioned qualified immunity in there but I didn't see anything about whether the law was clearly established. Was that just something you weren't challenging? No, and that is my second point that I would like to highlight. I'm not going to say that this initiating brief was done up to my standards or my firm's standards. I think that it failed to specify, to avoid an appeal, to avoid a situation like this. But the point of qualified immunity isn't that the defendant has the burden. In the case law in the Sixth Circuit it is very, very clear. Once qualified immunity is raised, which the district court specifically referenced that we did raise it in our initiating brief, the burden then shifts to the plaintiff. Yeah, the burden shifts but don't they have to know what it is that they have to satisfy? Like the law is not clearly established for these reasons and then the burden shifts to them to show that it is or whatever the case may be. And the same thing with the constitutional violation. Don't you have to at least let them know what your argument as to why qualified immunity applies? And that is the point of waiver. Waiver, the idea behind it is that it's an undue surprise. And I'm not here arguing to you that we raised qualified immunity and then the plaintiff wasn't on notice about qualified immunity. I ask you to take a look at the plaintiff's response brief to our motion for summary judgment. It is 43 pages long. 43 pages that address in great detail qualified immunity. And in fact, the easiest place to look is on the counter statement of issues presented. And this is the plaintiff responding to our initiating motion for summary judgment where we raise qualified immunity. One, whether defendants are entitled to qualified immunity on plaintiff's Eighth Amendment deliberate indifference claim. Let me ask you this. If you don't mention anything in your initiating brief about qualified immunity and the plaintiffs do exactly what they did here, which is they address qualified immunity, would you still say that you hadn't waived that particular defense because the plaintiffs addressed it? No, I wouldn't because of the affirmative defense and the pleadings. Qualified immunity was always on the table in this case. Plaintiffs understood it. There was no element of surprise. Defendants understood it. We did raise it initially. If we didn't, hypothetically speaking, if we just went right into our arguments without ever using the words qualified immunity in the brief, which we did. So you did waive it? We did not waive it. You did not at all? No, we did not waive it at all. And the burden was on the plaintiff to address qualified immunity and the fact that they have 43 pages specifically addressing three different issues of qualified immunity. They address the Eighth Amendment issue and they speak to qualified immunity for numerous pages. They address the First Amendment retaliation issue and they address it specifically. I'm a little confused because I think we all agree in Judge Mathis's questions talks about qualified immunity as two prongs. We first ask whether there was a violation of the Constitution and then second we ask whether that constitutional right or that violation was clearly established. And I see in your briefs places where you raise qualified immunity and also in your answer, but I didn't see any place where you raise the second prong at all about clearly established. Am I missing something somewhere? Is that phrase anywhere in any of your briefing on either your motion or your reply? In the initiating motion for summary judgment? Right, or in a response to an opposition? It is not. How is the district court judge supposed to know your argument on that prong if you don't argue it? The argument within the initiating motion for summary judgment concentrated on the first prong. If the first prong fails, there isn't. Right, so the judge went through and did a lot of analysis on the Eighth Amendment, the Fourteenth Amendment, and the First Amendment claims because you argued that. But how should we expect the lower court judge to analyze the second prong if you've never even used the words clearly established? So if you look at the plaintiff's brief in the summary judgment, which of course the burden shifting argument that I already made, they specifically address the second prong. And they address it only to the Eighth Amendment. They bring up some case law in support of their arguments. So the court was on notice that this entire first prong, second prong was at issue. Qualified immunity is two prongs, it's not just one. And interestingly, in the First Amendment retaliation argument, they do not cite a case because there isn't one. And that is important also to know. There's no waiver here, there's no element of surprise. Forty-three pages show that the plaintiff was not surprised. But when you get into the qualified immunity... Was the district court judge supposed to make your arguments on the clearly established prong because you guys didn't? No, they're not supposed to make our arguments, but there is the burden on the plaintiff and not the defendant. And I do note that the magistrate judge cited a case that said, you know, it's not the court's responsibility to put meat on the bone. But that's also who has the burden to put the meat on that bone. The plaintiff is the one who's bringing the meat to the table, not the defendant in this case. So that was not a case specific to qualified immunity. It's a case that generally, across all cases, it is the one with the burden that must put the meat on the bone. Here, we brought it up and the plaintiff understood it and ran with it for 43 pages. How much do you think you have to raise in order to protect qualified immunity as your defense, at least for some of the defendants? I mean, do you have to just say qualified immunity or do you have to sign the case or set out some conduct or what is it? I think with the burden being on the plaintiff, the case law of the Sixth Circuit is clear. Once qualified immunity is raised, the burden is on the plaintiff. Just by saying, we've raised qualified immunity. Yes. You did that. Yes, we did. That's all you have to do. That is, according to the case law, that's what we have to do. What's your best case on that subject that you're relying upon from this circuit? On page 16. That will make it easier for all of us. Yes, on page 16 of our brief, we cite that case law, Your Honor. Well, you can... I am sorry. Later. Jones v. Clark County, Sixth Circuit case from 2029, 59F3rd, 748. It's citing Johnson v. Mosley, 790F3rd, 649, specifically at page 653, and that is a 2015 case. We often get our nomenclature about waiver and forfeiture twisted, and I think there's a question here about both of them. If you invoked the defense, you seem to be saying, you know, we can't have waived this. We invoked it. It's in our answer. But what about actual arguments? You can certainly forfeit arguments by just not raising them at all. Is the argument forfeited on the clearly established prong? I don't believe that it is because it's a two-pronged test of which you need one to meet two. And our argument always was that they failed to meet the constitutional violation aspect, prong one. Right, so you argued on one, but rose an argument on two. Well, we never got there because our argument was that they failed to meet that. And the plaintiff needs to meet that because, again, it's the burden. So what they are required to do is say, well, number one, there is a constitutional violation. And because we argue that there is a constitutional violation and it's still our burden, we now have to show you that there's a clearly established case law in support. They weren't able to do that specifically with the retaliation claim. They're quiet to that because there is no case on point with these set of circumstances. And that is the second argument that I have here today, is that there is no case law to support that idea that when somebody who is in jail who is asking to be secured and made safe, when that person is removed and segregated so no one else can harm them, there's no case to say that that's inappropriate. There is limitations in jail, and our specific jail with these specific facts, there's three dorms, if you will, where people mingle, three female dorms. And when one person says, I don't feel safe, I need to be made safe, it's impossible to take that one person and leave them in the dorm and then take everyone around them and put them in separate isolation cells. What about moving the person that's creating the harm? Well, that was done the first time. But she had 12 different keep-separates, and keep-separates is the way the Berrien County Jail says, all right, inmate Smith does not get along with inmate Johnson, so we keep them separate, and it's noted. Well, once you have numerous keep-separates, you cannot move an individual from one dorm to another because there's one or two people in that dorm that need to be kept separate from. So the specific situations of this case is the only way to keep her from anyone she had to keep separate from and anyone she claimed was going to harm her was to put her in her cell. And these cells, this isn't in the basement, these cells are literally in the dorm. You're just, the dorm is next to the cell. You still have the ability to talk and watch TV with everybody else. This isn't in the basement of the jail. This was not retaliation, and they can't find a case law to say when somebody needs to be, when somebody asks for safety and they're put in a safe place, that is a constitutional violation. It just isn't. They did not meet their burden on that argument in response, and that's why we think that the retaliation claim specifically should be resolved at this level as well as the waiver issue. Thank you. Thank you. Good morning, Your Honor. Sean Cabot on behalf of the appellee, Wendy Cochran. I will start my argument with the first question that the court has raised, which arguably is probably the most critical regarding the waiver. On page 17 of their principal brief in here today, defendants continue to argue that the district court erred when it refused to consider their qualified immunity argument, even though defendants claim that the district court recognized that defendants raised it. I would dispute that, and the argument really defies the reality of defendants' efforts regarding the qualified immunity aspect of this case. If you look at defendants' motion for summary judgment brief, which is docket entry number 84, you merely find the phrase, qualified immunity, a meager three times in the entire brief. Page ID 233, 236, and 240. In essence, they are nothing but passing references. There is absolutely zero substantive discussion of qualified immunity. There is absolutely zero discussion, as the court has noted here today, zero discussion of the elements of qualified immunity, zero discussion of the application of qualified immunity as to the facts. It seems their position is they just raise it in the brief sort of the way they did, and it's the very shifts of the plaintiff to sort of flesh everything out, whether there's a constitutional violation, whether the law is clearly established, and their sort of position is that, you know, you spent, you heard the argument 43 pages sort of addressing those things, so does that cure any defect based on the fact that you actually addressed qualified immunity? It doesn't cure anything. The reality of litigation is, of course, in affirmative defenses, when I was in law school, they mentioned the kitchen sink affirmative defenses, right? You just kind of threw everything in there. It doesn't mean that at the end of the day, every single one of those affirmative defenses are going to be a basis of your defense that you're going to argue at summary judgment. So yes, while they may have raised it along with any other number of affirmative defenses, that in and of itself is not enough, and there's no case that says that. If there was a case that says, hey, all you got to do is raise this as an affirmative defense, that saves the day, there probably wouldn't be much argument. But there isn't a case that says that, and the district court acknowledged the case law from the circuit that basically says, look, you just can't throw something out there, hope something sticks, and expect the district court to put all the meat on the bones, right? The flesh on the bones. That's exactly what they did. So essentially, of abundance of caution, because let's assume for a moment that the district court said, well, okay. Before you go there, I think they raised the case today. They said Jones v. Clark County allows them to do what they did in this case. Well, I disagree, and we have case law that we cited in our brief, and also there's the Summey case, Summey v. Kenton County. It's a 604 F. 3rd 257 of 2010 Sixth Circuit case that addressed this issue and found that when they didn't raise it, it was waived. In fact, in that opinion, page 269, it says, the record below shows that although Eldridge raised qualified immunity as an affirmative defense in his answer, he never raised it as a defense in his summary judgment motion, and it has not been briefed by the parties. It is thus apparent that Eldridge was aware of the defense before discovery, had ample time to develop the defense during discovery, had the opportunity to present. Mr. Cabot. Yes. Here we have a situation slightly different from what you're reading to us where not only did the deputies here raise it in their answer, but they also at least mentioned it multiple times in their brief, and they have quite a fulsome argument on prong one. They might not call it for arguing prong one, but they have a lot of meat on the bones to go back to the phrase that we're using on whether there's a violation or not, and usually we're not so formal on what you call your argument, how you frame it. If you are making the actual substantive argument, which I think we'll agree they all do make an Eighth Amendment, First Amendment, Fourteenth Amendment argument in their brief, which would go to prong one, why do we not see that as them making a qualified immunity argument, albeit not on prong two, and maybe that's forfeited, but certainly there's a lot of meat on the bones for prong one. Well, again, I wouldn't use the word that they raised it. In my opinion, reading the briefing, they didn't raise it. You know, they throw some cases out there, but they don't apply it to the qualified immunity at all, and they don't, so while they may throw some cases out there, again, they don't apply those cases, and they don't meet the qualified immunity, even the first prong, and they certainly don't provide any case of whether that right was clearly established, so they don't, to the extent we can even argue that they raise it, which I don't think they raise it, I think they merely mention it, they certainly don't fully argue it or articulate it. And so my position is it's waived, it's forfeited, because they didn't do it. And for them, basically they're saying, well, thank you plaintiff for doing our job, and it almost seems as their argument is today that, hey, plaintiffs have the burden to basically flesh this out. That is against the case law. The case law does not require that. We did it out of an abundance of caution because, you know, hypothetically what would happen if the district court said, you know, if we read this, and it's like, well, they waived that argument, they don't argue it, it's not there, so we don't address it. Well, what happens then if the district court says, well, you know, you didn't mention it three times, you didn't argue it, you lose. So it's almost like we're being punished because we took some extra steps to ensure that the matter was addressed when it should have been addressed by defendants in the first place. And that's not how the case law works. So regarding that, the argument, the qualified immunity defense is waived, and I think both the magistrate judge in his report and recommendation clearly saw that, and the district court judge clearly saw that, and neither magistrate judge nor the district court judge chastised us for briefing it. Let me ask you this. If we found that they did properly raise qualified immunity, let's just assume that they did, do you lose? No, because the report and recommendation and the opinion by the district court judge which adopted the R&R found that there was constitutional violations of the Eighth Amendment and the First Amendment. And so, no, even if it's not waived, the court went through those, the elements, and found that there was violations of the Eighth and the First Amendment. And that goes back to kind of the almost underlying argument of all of this. Essentially, through the briefing, defendants criticized the report and recommendation of the district court for basically saying, well, there's material questions of fact here. Even the qualified immunity analysis, Tolan v. Cotton, and some of its progeny will say, if the qualified immunity is contingent on whose version of facts you believe, then qualified immunity has to be denied. So, yes, Your Honor, even if you accept the argument and you allow them to make it, it still fails for the legal reasons that we've set forth in our brief because there are material questions of fact. Now, they make a lot of criticism of the lower court decision saying, well, defendants have to believe, be believed, and basically plaintiff doesn't have to be believed. But that is the classic reason why we have jury trials. And at the summary judgment stage, when you have he said, she said, the district court can't make those determinations. And the case law is very clear that they are not to make those determinations. Whether or not defendants think, well, she's lying, or whether defendants think, well, she's got these mental health issues and she shouldn't be believed, again, those are not arguments properly before the district court. Those are arguments more appropriate for jury trial closing arguments opening statements. We don't have jurisdiction to look at any of that anyway. That's correct. And so it really kind of really short circuit perhaps what I would say today because the case law in the circuit is very clear that this court's jurisdiction basically only involves the legal question. And so the legal question really, as I see it, is really the qualified immunity and whether they can stand on it. If they can't, then it fails and we win. Even if you do allow the argument because there are questions of fact, the case still must proceed and the lower court decisions still have to be affirmed. They bring it up later before the district court at trial or pretrial or whenever or is that the end of qualified immunity if we say they haven't brought it up, they waived it or forfeited? My position, Your Honor, that's a very good question and that's why I think there needs to be a determination that they waived the argument because they had the opportunity to bring it. They had the opportunity for the court to deal with it. They didn't do that. So now what do we have to do? Do we have to wait now and proceed to a jury trial and then they can raise it there? I would say no. That would almost be like the third bite at the apple. Today my argument is, well, this is their second bite at the apple because they didn't take the first bite so now it's the second bite. Well, what, do they get a third bite? And then what if, you know, depending on what happens at the jury trial, then they appeal and then the argument comes back and we have to retry the case, do they get a fourth bite? There has to be a decision that ends this and clarifies this and kind of makes a decision today because, yeah, I mean, it could go on, I guess, for infinity and beyond, so to speak. And so I think it is important to have closure on that issue and say, look, it's waived, it's forfeited, you didn't raise it, it's done. You can't raise it again, go to your jury trial, whatever happens, happens. Of course, that's not for us to decide now. I'm just curious about what it was because the reason for that piece of law there, qualified immunity, is if someone is sued and he followed whatever the law was at the time, then the case is dismissed pretty quickly because he wouldn't have to waste time spending it on lawyers and going to trial. But if it's not clearly established by them, or if it is clearly established, then he does have to do that. That's the purpose of it. So I don't know whether it could be raised later before the trial judge or not. Yeah, and again, Your Honor, I would say no, and that's part of the reason why we're here today. So because the case law says, you know, this defense is supposed to be raised and basically argued at the most earliest time, right, to avoid cost, expense, you know, that phraseology that the case law says. And, you know, to me, I would argue, look, they recognized that qualified immunity really wasn't applicable here because of the questions, the myriad of questions, in fact, and perhaps that's why they didn't raise it. And so in my opinion, my estimation, looking at the record here, it's done. Once the court decides it and we request that, you know, they deem it waived, then it's waived and it can't be raised again. Unless this court has any other questions, we'll rely on our briefings. Thank you, counsel. Thank you. Counsel, for the appellee brought up the Eldridge case, I believe it was. I didn't write it down, but in response to the Burden question, they cited Eldridge, but it sounds to me, and I have to look at this more, but he said that the decision was based on that neither party briefed the issue. And it sounds like that was an affirmative defense that was raised, and sometime later I presume the defendant sought some sort of dismissal and the court said, well, wait a second, this wasn't even addressed at the summary judgment stage at all. That's the element of surprise and waiver that I'm talking about. It sounds to me like Eldridge specifically was a surprise on that plaintiff. Let's assume that you did raise it. So what's the purely legal issue that you're asking us to resolve here on this appeal? Well, it is the burden, the burden issue. We raised it. The plaintiff has the burden. And the case law supports that on qualified immunity. And the language used by appellee's counsel today was they don't meet the first prong, and that's the burden shift language that is confusing in these qualified immunity cases in general, but specifically here in this case with appellee's counsel saying they don't meet or we don't have to meet. That's the burden shift issue. So you're not asking us to say anything about the Eighth Amendment or the First Amendment or the Fourteenth Amendment, all that was briefed in the case. You're only asking us to resolve a legal question about the burden? Well, it's the burden and it's the waiver. First of all, there was no waiver. The waiver. Second is the burden. And because we didn't waive it and because it's the plaintiff's burden, there is an issue on the clearly established aspect of this case. That is something I think this court really needs to look at because the burden is on the plaintiff to say here is a case that defeats, in this example, the First Amendment retaliation claim, and they didn't do that. And they didn't do that. And I also find this interesting. Counsel for the police said that they were being extra cautious in their response. And when you ask them about the waiver issue, they didn't address the waiver issue. They addressed 43 pages of qualified immunity. If they really had identified, truly identified the waiver issue, they could have written one page saying, first of all, they waived qualified immunity and we asked the court to dismiss their summary on that basis. Then they could have gone into the 43 pages of, in the alternative, if they didn't waive, they didn't do that. So there is some hindsight here, vision from Appalachia Council. They were not surprised. The waiver did not occur, and they never recognized it. There's no waiver here, and we start to look at the merits of the different issues. I know you've addressed the First Amendment issue. Are the deputies willing to accept the facts as found by the district court for us to resolve a legal question on the Eighth Amendment claim? I think we have to. I don't think you can step into that pool. Okay, so the district court found that there were material issues of fact that Ms. Cochran was assaulted multiple times by another inmate, complained about it multiple times by another inmate, that other inmates complained about it as well, and that they didn't do anything to protect her safety until June 3rd. So if we're accepting that, you're asking to argue if not protecting her in those circumstances for that period of time is a clearly established violation of the Eighth Amendment. That is the argument in the briefing, which is consistent, of course, with the First Amendment retaliation argument as well. So we do have two different issues. And you think that not protecting her through all of those complaints and all of the things that she endured is not a violation of the Eighth Amendment? Well, what we did in our briefing, in this appeal brief, as you see, we think that the evidence suggests that the... But we don't do the evidence. That's right. So I'm asking you if you're willing to accept the facts, and you told me yes, and now I'm telling you that I actually agree with that. For the sake of summary judgment and for the sake of being here in front of you, yes, we have to accept those. We have to. Thank you. I don't want to keep you a little longer. Thank you. Thank you all for your arguments and briefs. Your case will be submitted.